G. C. NEHRING, Appellant, v. S. M. HAMILTON et al., Appellees.

No. 40567.

OCTOBER 21, 1930.

*Percival & Wilkinson,* for appellant.

*C. A. Robbins* and *C. E. Hamilton,* for appellees.

EVANS, J.—The plaintiff apparently acquired the title to the real estate in controversy from W. L. Smalley, whose title thereto never appeared of record. Immediately after the acquisition of his title by the plaintiff, the defendant Hamilton, who was a judgment-creditor of Smalley's, and who had been such judgment-creditor for more than two years prior to the plaintiff's acquisition, levied an execution upon the property, and caused the same to be sold thereunder. Smalley acquired his title in the first instance in 1911. The property at that time

was owned by one Mrs. Ruth. Smalley held a $700 mortgage thereon. The mortgage thereon was equal to the value of the property, and in satisfaction of the mortgage, Mrs. Ruth conveyed the property to Smalley. The method of the conveyance was the delivery to Smalley of a warranty deed, duly executed by Mrs. Ruth. In this deed the name of the grantee was not inserted in any of the blank spaces therein provided. The deed also contained a clause whereby the grantee assumed and agreed to pay the $700 mortgage. This deed was never recorded. Smalley, however, took possession of the property, and collected the rents thereon, and listed the same for taxation in his own name. The parties agree that, under this deed, Smalley acquired a good equitable title to the property, and that it was within his power to convey the same to any purchaser by delivery of his deed and by the insertion therein of the name of the purchaser, as grantee. Prior to September, 1928, Smalley became indebted to the plaintiff for a grocery bill amounting to more than $1,000, and was being pressed for payment therefor. In consideration of such account and the satisfaction thereof, Smalley delivered the deed in question to the plaintiff, and inserted therein the name of the plaintiff, as grantee. If this were the whole story, there could be no controversy. There is another thread, however, that runs through this fabric, which tends to change its color and its character, as contended by the plaintiff.

Mrs. Alexander was the owner of considerable real estate in and about the city of Winterset. Smalley was her general agent in charge thereof. In 1915, he became indebted to his bank in the sum of $1,450, for which he gave his note, signed by himself and Mrs. Alexander, as his surety. In consideration for such signing on her part, he claims to have delivered to her the Ruth deed. It is contended on behalf of plaintiff that the effect of the delivery of such deed at such time was to convey the property to Mrs. Alexander, and that from that time forth she was necessarily the owner thereof. It was also testified by Smalley that Mrs. Alexander ultimately paid the note for which she became surety. It does appear also that, at a later time, Mrs. Alexander returned the deed to the custody of Smalley; and so far as appears, he had the custody thereof at all times thereafter until the delivery thereof to the plaintiff. In explanation of this circumstance, Smalley and Mrs. Alexander testified that such cus-

tody was wholly in trust, and as agent for Mrs. Alexander. Both Smalley and Mrs. Alexander testified that she paid the taxes thereon. This evidence would be more satisfactory if some tax receipts had been produced. It was never assessed to her, but was assessed always to Smalley, and listed by Smalley. In line with this claim of custody in trust, it is also claimed that, though plaintiff received the deed from Smalley and pursuant to a contract with Smalley and for the benefit of Smalley, yet he received the same constructively from Mrs. Alexander, in that her trustee had obtained her consent to use the deed for the purpose of his transaction with the plaintiff. Shortly before the trial of this case, but after the commencement thereof, Mrs. Alexander became the wife of Smalley. We shall, however, for the convenience of discussion, refer to her throughout as Mrs. Alexander. It will be seen from the foregoing that Smalley and Mrs. Alexander held to themselves a large field of evidence wherein their testimony could not well be contradicted by any other witness. This fact of itself would require the court to scrutinize their evidence and to look into the inevitable circumstances attending them for confirmation or the contrary. In this case, Mrs. Alexander did not make herself known in any manner to the plaintiff in the transaction with him. She testified that she gave the deed to Smalley to pay his indebtedness therewith, the same as if she had ''given him $500.'' The testimony of Mrs. Alexander at this point is quite destructive of the idea of a trust. She had no interest in the transaction under consideration, and she reserved no right in the delivery of the deed. To take this evidence upon its face, it was evidence of a gift, then and there. The plaintiff believed that he was acquiring the property from Smalley. According to his testimony, Smalley told him he owned it, and offered it to him in satisfaction of the grocery bill. Mrs. Alexander was in no position to challenge the validity of the conveyance by Smalley to the plaintiff. Under the evidence, plaintiff was clearly entitled to hold the property as under a conveyance from Smalley. As between him and Smalley, plaintiff could not have claimed his title to be otherwise; and as between him and Mrs. Alexander, she could not have claimed it to be otherwise.

The findings of the district court challenged the veracity of Smalley and of Mrs. Alexander at some points of their testimony.

The plaintiff saw fit to rest his case upon their uncorroborated testimony as to material facts which ought to have been corroborated. For instance, it was testified by them that Mrs. Alexander paid the $1,450 note. Such alleged payment, as disclosed by their later evidence, was constructive purely. Smalley actually paid the note. ' He claims, however, that he paid it with the money of Mrs. Alexander. This was the basis of her testimony that she paid the note. This was a bank transaction, and carried some record, to say the least. Smalley was a business man, acting as manager of Mrs. Alexander's business. Presumptively, he had a book of accounts. They could have been produced. They would have disclosed by their entries whether Mrs. Alexander's money paid the note. In weighing this evidence, the judicial mind naturally seeks for just such corroboration. The failure to produce the same or to explain such failure tends to impeach the evidence of the uncontradicted witness, where direct contradiction is, in the nature of the circumstances, impossible. On the question of alleged tax payments by Mrs. Alexander, one tax receipt would furnish more assurance than many asseverations. The acquisition of the deed by Smalley from Mrs. Ruth, and by the plaintiff from Smalley, for his own benefit, standing alone, would make a clear case for the defendant. If, underneath these transactions, there was a concealed trust in favor of Mrs. Alexander, the burden of proving it was upon the plaintiff, and such burden was a substantial rather than a formal one. The district court held that the trust was not proved, and that Smalley was the real owner of the property, and that plaintiff took his title from and through Smalley, and not otherwise. We reach the same conclusion, and the decree dismissing the petition is, accordingly,—*Affirmed.*

MORLING, C. J., and FAVILLE, KINDIG, and GRIMM, JJ., concur.